[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The issue now before this court is the determination of support arrearages. In 1996, the State initiated a paternity petition against the defendant father regarding a minor child CT Page 7270 Victoria, born September 25, 1991. The defendant did not contest the petition and on September 10, 1996, the court, Ginsberg,F.S.M. entered a judgment that Ward was father of the minor child and ordering him to pay $120.00 per week in current support plus $15.00 per week on an arrearage for past due support to the State in the amount of $2,647.00.
In November, 1996, the defendant filed a motion to modify. Service on the plaintiff mother in Montgomery, Alabama, was accomplished in accordance with orders of notice. On February 7, 1997, the court, Matasavage, F.S.M., temporarily modified the order to $80.00 per week, to revert to the original order on March 21, 1997. The court found arrearages of $2,542.00 to the State and $1,065.00 to the plaintiff, and allocated the $15.00 per week arrearage payment $5.00 to the State arrearage and $10.00 per week to the plaintiff's arrearage.
In October, 1998, the defendant once again filed a motion to modify seeking to reduce the support order. Both the plaintiff and the defendant attended. After a hearing, the ordered was modified to $83.00 per week consistent with the child support guidelines. However, the support enforcement division reported an arrearage to the State of Connecticut of $3,992.00. Both parties questioned the arrearage amount and the court found it inconsistent with the prior judgment in March. The support enforcement officer stated that her records suggested that the plaintiff's arrearage had been assigned to the State because the plaintiff mother had resumed Temporary Family Assistance (TFA)[1] for the child. The plaintiff denied any resumption of public assistance other than a period prior to the paternity judgment. The court ordered the State to audit the account and to provide verification of the public assistance grant. At the continued hearing the Department of Social Services did not provide a witness. It did submit, through the Support Enforcement Division, a "statement of assistance" (State's exhibit A) purporting to establish public assistance rendered to the family. The plaintiff testified that she received no public assistance for her children, but that her elderly mother received a grant which was paid to her as caregiver. The support officer confirmed that this was consistent with the records and opined that the Department of Social Services had seized the plaintiffs child support arrearage to offset the accruing maintenance bill for the grandmother.
The Department of Social Services failed to produce a witness CT Page 7271 to explain the basis if any for the claimed assignment. Neither the Support Enforcement Officer nor the Assistant Attorney General present at the hearing could cite any authority. The court undertook a cursory review to determine if an obvious statutory basis exists. This was made difficult because the State offered not a clue as to which of the myriad of human services programs applied to this particular case.
Programs providing services for the elderly, such as those established in General Statutes §§ 17b-424 through 17b-427 do not appear to include a specific reimbursement provision, and accordingly no assignment or lien language. Nor does the Family Support Grant Program[2], General Statutes § 17b-616. The statute governing General Assistance appears to concern reimbursement only from the several towns. General Statutes § 17b-78 (d). The various medical assistance programs, General Statutes § 17b-220 et seq., which provide aid to adults as well as children have a reimbursement element backed by an assignment of support rights. General Statutes § 17b-285. However, the statutory language appears to require an assignment only from the aid recipient and only of support from the spouse of such person[3]. This clearly could not be extended to provide the State cause to assign to itself support paid for the aid recipient's grandchild by the child's father, who never had a marital relationship with the child's mother, much less with the aid recipient.
There remains the catch-all assignment language buried within General Statutes § 17b-77: "Application for aid under the state supplement program, medical assistance program, temporary family assistance program and food stamps program, shall be made to the Commissioner of Social Services. . . . Such application, in the case of temporary family assistance, shall be made by the supervising relative. . . . By such application, the applicant shall assign to the commissioner the right of support, present, past and future, due all persons seeking assistance and shall assist the commissioner in pursuing support obligations due from the absent parent. Notice of such assignment shall be conspicuously placed on said application and shall be explained to the applicant at the time of application." The assignment portion clearly relates to child support. It can not possibly be construed to license diversion of support intended for a child from her father to reimburse the State for assistance rendered to the child's grandmother, who bears no kinship to the support obligor. In Connecticut, infant children are not expected to CT Page 7272 support their adult grandparent.
The support enforcement division submitted a print-out of all payments made on the account showing the distribution (State's exhibit B). From this data, the court finds that since February 5, 1997, the date of the last arrearage finding, Mr. Ward has paid $11,182.00 in support. During the same period of time, his weekly current support obligation totaled $11,910.00[4] Thus the total arrearage of $3,607.00 owing on February 5, 1997 has increased by $728.00 to $4,335.00.
The data as to how the collected support was disbursed is difficult to read. It appears that the State, since February 5, 1997, has distributed only $2,183.00 to the plaintiff and retained $8,999.00. Since the original State arrearage was $2,542.00, the State has overpaid itself $6,457.00. The plaintiff, who should have received all of the current support plus her arrearage, is now owed $10,792.00. Accordingly, the State is ordered forthwith to pay over to the plaintiff the excess money that it collected and retained in the sum of $6,457.00. The court finds an arrearage balance of $4,335.00 owed by the defendant to the plaintiff as of February 3, 1999. His $15.00 per week arrearage order shall be allocated and paid entirely on the plaintiffs arrears.
Lifshitz, Family Support Magistrate